UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EVELYN GILLMAN,
    **Plaintiff,**

    v.

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:16-cv-731
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECCOMENDATION

Plaintiff, Evelyn Gillman, brings this action under 42 U.C.S. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 15.), and the administrative record. (ECF No. 7.) For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed her application for benefits on March 5, 2013, alleging that she had been disabled since December 2012 due to chronic back pain, spina bifida, diabetes mellitus, and bone spurs in the right shoulder. (R. at 19.) Plaintiff's applications were denied initially on May 21, 2013 and upon reconsideration on August 9, 2013. Plaintiff sought a hearing before an

administrative law judge. On February 13, 2015, Plaintiff, represented by counsel, appeared and testified before Administrative Law Judge John Montgomery ("ALJ"). Millie Drosty, the vocational expert ("VE") also appeared and testified at the hearing. On June 8, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final Agency decision on May 31, 2016 when the Appeals Council denied review. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises three issues. She asserts that the ALJ erred by determining that she could return to her past relevant work as generally performed because the ALJ did not acknowledge that Plaintiff's past relevant work constituted a composite job. (Plaintiff's Statement of Errors ("SOE") at 7, ECF No. 8.) Second, she contends that the ALJ relied on an internal contradiction and therefore his determination is not supported by substantial evidence. Third, and finally, Plaintiff maintains that the ALJ erred by relying on a credibility determination that was not supported by substantial evidence. (*Id.* at 13.)

In her Memorandum in Opposition, the Commissioner counters that the ALJ's decisions that Plaintiff could perform her past relevant work as a director of nursing, and that Plaintiff had transferable skills that would allow her to perform a significant number of other jobs, were supported by substantial evidence. (Defendant's Memorandum in Opposition ("Def.'s Opp.") at 2–3, ECF No 15.) The Commissioner further contends that substantial evidence supports the ALJ's credibility determination. (*Id.* at 6.)

## I. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified that she lives with her husband, two adult daughters, her two grandchildren and her son-in-law. (R. at 36.) Plaintiff has a license but has not driven in a year

2

and a half. She stated that her husband drove her to the hearing and that they had to stop along the way so she could get out of the car to stretch her back. (R. at 37–38.) Plaintiff testified that she last worked at Heartland of Fairfield as the director of nursing. (R. at 38.) As the director of nursing, she oversaw direct patient care, supervised the nurses, wrote performance reviews, and had the ability to hire and fire. (*Id.*) Periodically, if the situation arose, she took care of patients herself. (R. at 39.) She testified that typically, eighty percent of the time she worked she was overseeing others who were doing their jobs as opposed to taking care of patients on the floor. She further testified that when overseeing other nurses she was seated about fifty percent of the time and standing about fifty percent of the time. (*Id.*) She stated that she carried books, manuals, and charts to and from meetings. (*Id.*)

Plaintiff also testified that she was an adjunct instructor for Daymar College where she taught clinical skills to the school's nursing technician students. (R. at 40.) She testified that she stopped working in December 2012 after the administrator asked her to resign based on her performance. (R. at 41–42.) She further testified that her performance suffered as a result of issues caused by her pain and the need for her to take breaks to stretch. (R. at 43.)

According to Plaintiff, since she stopped working in 2012, the pain in her back has increased. She testified that she used to get back injections, but that her physician worried about the injection's effect on her blood sugar so he recommended that she stop the injections. (R. at 45.) Within the previous eight months Plaintiff testified that her pain increased so that she could only stand for about seven minutes at a time and she has a hard time sitting. (R. at 48–49.) Plaintiff has had issues walking for over three years. She testified that she received the job of director of nursing because of her skills but also because "my employer thought that would be a helpmate [phonetic] for my health to offer me that job." (R. at 48.)

3

Beyond her back pain, Plaintiff testified that she suffers from uncontrolled diabetes, which she says causes "vision fluctuations and the eye doctor that I see cannot give me any pair of glasses that works for me because my blood sugar fluctuates." (R. at 50.) She testified that she has experienced these vision problems for the past ten years, that she does not read because of her vision but that she does watch television. (R. at 50–52.)

Plaintiff testified that she does not do any of the chores around the house. (R. at 54.) She also explained that she had shoulder surgery, but that she continues to experience pain in her right arm but that her left arm is okay. (R. at 58, 62.)

**B. Vocational Expert Testimony**

The vocational expert Millie Drosty ("VE") testified that Plaintiff's past work, when classified according to DOT included the following work: as a head nurse, a medium position; staff nurse, a medium position; licensed practical nurse, a medium position; nursing supervisor, a light position; and director of nursing services, a sedentary position. (R. at 66.) She continued to explain that under Plaintiff's descriptions, a staff nurse (both RN and LP) would be considered a heavy to very heavy exertional level. She further testified that "as a nursing supervisor, she was a working nursing supervisor and also did some staff work as the director of nursing. That would elevate those levels up to the heavy as well occasionally." (R. at 67.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 68–69.) The first hypothetical the ALJ posed was as follows:

> If I ask you to assume an individual who was born in February of 1964 who has more than a high school education and who has the past work experience that you have identified here for us today - - if I ask you to assume that such an individual retained the functional capacity to perform light work as defined in the Dictionary of Occupational Titles but the individual would be limited to only occasional stair climbing - - climbing ramps or stairs and would be precluded from climbing ladders, ropes, scaffolds, the individual could frequently stoop, kneel, crouch, and occasionally crawl – now with those limitations, could the hypothetical person

perform any of the work that the claimant's performed in the past either as described by the DOT or as she performed it?

(R. at 67–68.) Based on the hypothetical, the VE testified that a similarly situated hypothetical individual could perform her past position as a nurse supervisor under the DOT description but not as she described the position and that Plaintiff could perform the director of nursing position both as DOT described it and as Plaintiff testified. (R. at 68.) The ALJ then altered the hypothetical to limit the hypothetical individual to only performing sedentary work. The VE testified that Plaintiff could still perform the director of nursing position. The VE also testified that Plaintiff was capable of performing other jobs if limited to a sedentary position including: charge account clerk with 4,000 jobs locally and 400,000 jobs nationally; order clerk, with 9,000 jobs locally and 200,000 jobs nationally; and patcher, with 100 jobs locally and 120,000 jobs nationally. (R. at 69.)

The VE further testified that Plaintiff has transferrable skills which open up other sedentary job opportunities such as: case worker, with 2,400 jobs locally and 400,000 jobs nationally; claims examiner, with 6,000 jobs locally and 250,000 nationally; and insurance clerk, with 5,000 jobs locally and 500,000 jobs nationally. (R. at 70.) To follow up, the ALJ asked the VE "now with these jobs, if the individual needed to let's say stand and stretch after one hour, you know, for like a minute or two and then before they could sit back down again, would these types of unskilled jobs allow for that change in position?" (R. at 71–72.) The VE confirmed that the unskilled jobs would allow for such accommodation and that the skilled positions would allow for even more accommodation. (R. at 72.)

## II. MEDICAL EVIDENCE[1]

### A. Dr. Haggenjos

In February of 2013, Plaintiff visited Dr. Haggenjos for back pain radiating into her right leg. An x-ray of her cervical spine showed mild cervical spondylosis. (R. at 250.) An MRI of her lumbar spine showed moderate disk protrusions at L2-3 and L4-5 with no central canal stenosis. (R. at 251). Dr. Haggenjos increased Plaintiff's medication in March 2013, but she continued to complain of back pain. (R. at 258–59.) In July 2014, Plaintiff reported that she was experiencing limited mobility in her right shoulder and indicated that she had back pain but did not want any more injections. Dr. Haggenjos noted a decreased range of motion in her shoulder and back and increased her medication. (R. at 428–31.)

### B. Dr. Marshall

Plaintiff visited Dr. Marshall in February 2014 for low back pain. She reported that she had significant improvement from a right SI joint injection. She also indicated that she now had right shoulder pain. Dr. Marshall found that Plaintiff had normal gait with full range of motion in her cervical spine. He also noted that she had mildly decreased range of motion in her back with normal strength in her extremities. Because Plaintiff did not want another injection, Dr. Marshall recommended an EMG. (R. at 414–15.) Plaintiff's EMG of her right extremity showed no evidence of radiculopathy or neuropathy. (R. at 395–96.)

### C. Dr. Hollingsworth

Plaintiff visited Dr. Keith Hollingsworth in April 2014 for her right shoulder. Dr. Hollingsworth noted that the MRI of Plaintiff's right shoulder showed evidence of impingement. In My 2014, Dr. Hollingsworth noted improvement in her shoulder and found that Plaintiff had

---

[1] The Court limits its analysis of the medical evidence to the issues raised in Plaintiff's Statement of Errors.

full range of motion and strength in her right upper extremity. He recommended that Plaintiff attend physical therapy. (R. at 409–8.)

### III. ADMINISTRATIVE DECISION

On June 8, 2015, the ALJ issued his decision. (R. at 13–25.) At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantially gainful activity since December 7, 2012, the alleged onset date of disability. (R. at 15.) The ALJ found that Plaintiff had the severe impairments of spina bifida, degenerative disc disease of the cervical and lumbar spine, arthritis of the right hip, degenerative changes of the right shoulder, diabetes mellitus, and obesity. He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P. Appendix 1. (R. at 18.) In rendering this determination, the ALJ found:

> Despite the claimant's diagnosed impairments, the medical evidence does not document listing level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination. In making this finding, the undersigned considered Listings: 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 9.00 (endocrine system). Pursuant to Listing 1.02, the claimant has not shown an inability to perform fine or gross manipulation effectively. The claimant had a normal gait with no recommendation of an assistive device (Exhibits 4F, 17F/3-4). Although diabetes mellitus is no longer a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, the claimant's diabetes mellitus was considered in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling. The doctor only recently found that the claimant suffered from lower extremity neuropathy and there is no testing to confirm it (Exhibit 20F/1-4).

(R. at 18.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as

7

defined in 20 CFR 404.1567(a), as the claimant can lift and/or carry no more than 10 pounds frequently and or occasionally; stand and/or walk for 30 minutes at a time for a total of 4 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds but occasionally climb ramps and stairs; and occasionally kneel, stoop, crouch, and crawl.

(R. at 18–19.) In reaching this determination, the ALJ gave limited weight to Dr. Hollingsworth, finding the doctor's limitations inconsistent with the record.

Dr. Hollingsworth opined that Plaintiff could occasionally lift 13-25 pounds, sit less than eight hours, stand and/or walk for less than 2 hours, and grasp less than one-third of the day. (R. at 22.) The ALJ found this determination inconsistent because the Plaintiff has no other standing or walking restrictions and medical evidence shows that she has a normal gait and strength in her extremities. (R. at 22.) The ALJ similarly gave "limited weight" to Plaintiff's treating physician Dr. Haggenjos' March 2013 and January 2015 opinions, finding those opinions inconsistent with the record. In the March 2013 opinion, Dr. Haggenjos opined that Plaintiff cannot work and in the January 2015 opinion, he opined that Plaintiff is permanently disabled. The ALJ gave "some weight" to Dr. Haggenjos June 2013 and December 2014 opinions, reasoning as follows:

> [c]laimant only receives conservative care for her severe impairments other than surgery on her right shoulder . . . Dr. Haggenjos then completed a medical source statement in June 2013 that she could stand/walk for 30 minutes to an hour and sit for 7.5 hours. Dr. Haggenjos noted that the claimant had manipulative limitations and could not perform postural restrictions (Exhibit6/F/1-2). Dr. Haggenjos then completed a medical source statement in December 2014 finding that she could lift up to 10 pounds, perform occasional manipulative limitations, and miss 5 or more days of work (Exhibit 20F/12-14). The undersigned gives some weight to these opinions of Dr. Haggenjos as they are somewhat consistent with the record. The undersigned notes that the claimant has been restricted already to 30 minutes of standing or walking at one time.

(R. at 22.)

Considering Plaintiff's age, education, work experience and RFC, and relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs existing in the national economy. (R. at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

9

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff raises several assignments of error. In Plaintiff's first and second assignments of errors, she argues that the ALJ erroneously found that she could return to her past relevant work as generally performed because her past work was a "composite job" and further contends that the ALJ erred in making alternative findings by relying on an internal contradiction. In her third assignment of error, she argues that the ALJ's credibility determination was not supported by substantial evidence.

**A. The ALJ's determinations at step four and five were supported by substantial evidence**

Plaintiff contends that the ALJ erred at step four by finding that she could return to her past relevant work. She further maintains that the ALJ then erred at step five by relying on what she argues to be "an internal contradiction" in making alternative findings. The ALJ's findings, however, are supported by substantial evidence at steps four and five. Accordingly, the Undersigned **RECCOMENDS** that Plaintiff's first and second contentions of error be **OVERRULED**.

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four, Plaintiff had the burden of showing that she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). Once she had shown this, the burden at step five shifts to the Commissioner to show that, taking into account a Plaintiff's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). Although the burden of proof lies with Plaintiff at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *See* 20 C.F.R. §§ 404.1571 and 416.971; 404.1574 and 416.974; 404.1564 and 416.965. This is done by comparing Plaintiff's "residual functional capacity and the physical and mental demands" of the Plaintiff's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). After comparing these two items, Plaintiff must be able to perform: 1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers through the national economy. Soc. Sec. Rul. No. 8261, 1982 WL 31386, at *1 (Soc. Sec. Admin., 1982) ("SSR 82–61.")

## A. Step Four

Substantial evidence supports the ALJ determination that Plaintiff can perform her past relevant work as she described. (R. at 23.) Upon consideration of the Plaintiff's residual functional capacity, the VE testified that Plaintiff could perform her past relevant work as a director of nursing both as she described it and as defined under the DOT description. (R. at 69.)

Plaintiff argues that the ALJ erred because he did not specifically discuss Plaintiff's past relevant work as a director of nursing as a composite jobs. Social Security Ruling 82-61, 1982 SSR WL 31387 defines a composite job as having "significant elements of two or more occupations and, as such, hav[ing] no counterpart in the DOT [Dictionary of Occupational Titles]." Plaintiff asserts that because her job as director of nursing was a "composite job," the ALJ could not determine that she was capable of her past relevant work.[2] (SOE at 7 (citing POMS DI 25005.020(B)).)[3] The Commissioner counters that the VE testified to Plaintiff's past relevant work "as she performed it." The Commissioner further asserts that the ALJ was entitled

---

[2] In support of her argument, Plaintiff submitted a letter from William T. Cody, a vocational expert who opined, after the ALJ's decision, that Plaintiff's past work was a composite of a nurse supervisor and a general duty nurse "even though her title was director of nursing." (R. at 241.) Mr. Cody therefore found "[s]ince Ms. Gillman did not previously as a nursing director [sic], but rather as a nurse supervisor [sic] she could not return to the nurse supervisor job as it is typically performed at the light level of physical demand." (R. at 242.) Mr. Cody based his decision on Plaintiff's affidavit where she described her duties as "going around and supervising staff, holding meetings, and providing direct patient care. She lifted up to fifty pounds and was on her feet most of the day." (R. at 241.) Plaintiff, however, testified at the hearing that she spent 80 percent of her time supervising the nurses and that she was seated for 50 percent of her day. (R. at 39.)

[3] POMS DI 25005.020 provides "if [the ALJ] cannot accurately describe the main duties of [past relevant work] only by considering multiple DOT occupations, the claimant may have performed a composite job." POMS DI 25005.020(B); *see also Leeson v. Comm'r of Soc. Sec.*, No. 2:14-cv-335 2015 WL 5358891, at *16 (S.D. Ohio Sept. 14, 2015). "POMS further provides that because a composite job does not have a DOT counterpart, the ALJ should 'not evaluate it at the part of step 4 considering work as generally performed in the national economy.'" *Id.*

12

to rely on the VE's testimony, which did not address Plaintiff's past relevant work as a composite job. (Def.'s Opp. at 4.) The Undersigned agrees.

The VE testified that Plaintiff's past relevant work as director of nursing services was a sedentary position but that because, as Plaintiff described her job duties, she did some staff work, it would be considered "heavy occasionally." (R. at 66.) Relying on the VE's testimony, the ALJ compared Plaintiff's residual functional capacity with the physical and mental demands of her past work and determined that Plaintiff could perform her past work as director of nursing. (R. at 23.) The Undersigned finds that the ALJ properly compared Plaintiff's RFC to the job as she described it because the ALJ correctly relied on the VE's testimony. *Hurley v. Comm'r of Soc. Sec.*, No. 1:13-cv-913, 2015 WL 954192, at *12 (S.D. Ohio March 3, 2015) ("even assuming the purchasing/sourcing agent job is appropriately characterized as a 'composite job,' the ALJ could properly compare plaintiff's RFC to the purchasing/sourcing agent job as plaintiff actually performed the job and determine whether plaintiff was capable of performing all components of the job."). The ALJ, therefore, did not err in relying on the VE's testimony. *Leeson* , 2015 WL 5358891, at *16 (holding the ALJ properly relied on the VE's testimony where the "VE did not testify that Plaintiff's past relevant work consisted of composite jobs.")

Additionally, "Plaintiff's failure to raise this issue during the hearing precludes her from asserting it now as grounds for relief." *Stevens v. Comm'r of Soc. Sec.*, Case No. 2:14-cv-2186, 2016 WL 692546, at *11–12 (S.D. Ohio Feb. 22, 2016) *R&R adopted*, 2016 WL 115618 (S.D. Ohio March 24, 2016) (holding that because Plaintiff's attorney did not "question or object to the VE's characterization of Plaintiff's past work . . . Plaintiff may not now complain because the ALJ relied upon the VE's description of Plaintiff's past work." ); *citing McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (finding plaintiff could not complain about

substance of vocational expert's testimony when counsel failed to cross examine the expert on the matter during the administrative hearing). Plaintiff's attorney never objected to the VE's testimony not classifying Plaintiff's job as composite and therefore like the Plaintiff in *Stevens* is precluded from asserting it now as a grounds for relief. (R. at 71); 2016 WL 692546, at *11–12.

Consequently, Plaintiff, who has the burden, has not demonstrated that she is unable to perform her past relevant work at step four.

**B. Step Five**

Alternatively, the VE testified that Plaintiff has transferrable skills which open up other sedentary job opportunities such as: case worker, with 2,400 jobs locally and 400,000 jobs nationally; claims examiner, with 6,000 jobs locally and 250,000 nationally; and insurance clerk, with 5,000 jobs locally and 500,000 jobs nationally. (R. at 70.) Relying on this testimony, at step five the ALJ made the alternative finding that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant has also acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (R. at 24.)

Plaintiff argues that the ALJ erred at step five when he found that Plaintiff has transferable skills that allow her to perform a number of other sedentary jobs such as caseworker, claims examiner, and insurance clerk. (R. at 70.) Apparently, Plaintiff does not take issue with the ALJ's conclusion that she has transferable skills; but instead she believes the ALJ erred regarding the twelve-month durational period during which she was more restricted. (SOE at 11–12.) She specifically points out that the ALJ noted in his RFC determination, "while there may have been brief period during which the claimant was more restricted, there have been no 12-month period during which she could not perform work as described above." (R. at 23.) She

14

maintains that the ALJ's acknowledgment of brief periods where Plaintiff had higher restrictions contradicted his RFC. (SOE at 12.) She specifically argues "[t]he ALJ's denial rested upon the notion that she could either do sedentary past work or had skills transferable to other sedentary work activity." (*Id.*)

Contrary to the Plaintiff's assertion, the Undersigned finds no inconsistency in the ALJ's acknowledgment of periods of higher restriction, none of which satisfied the durational period of twelve-months, and his ultimate conclusion that Plaintiff was not disabled within the meaning of the Social Security Act. To prove disability, a claimant must show that his or her impairment or impairments "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Plaintiff offers no evidence suggesting that the ALJ erred in finding that these brief periods lasted less than twelve months and the Court's independent review finds nothing to contradict his conclusions. *See* 20 C.F.R. § 404.1512(a) ("claimant bears the burden of showing that his or her impairment meets the duration requirement described in § 404.1509."). Accordingly, the ALJ's decision was not internally inconsistent. The Undersigned therefore finds no error in the ALJ's analysis at step 5 and that it is supported by substantial evidence

## B. Substantial evidence supports the ALJ's credibility determination

In her next assignment of error, Plaintiff argues that the ALJ credibility assessment of Plaintiff is not supported by substantial evidence. (SOE at 13.)

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining

to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs*., 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he

16

must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Pursuant to SSR 16-3p, the ALJ must evaluate seven factors in determining credibility:

> In addition to using all the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416(c)(3). These factors include:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of pain other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2016 WL 1119029 (March 16, 2016).

SSR 16-3p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v. Berryhill*, Case No. 5:16-cv-01942, 2017 WL 29125, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248).

In the instant case, the ALJ properly followed the two-step process for analyzing Plaintiff's credibility. (R. at 24–28.) First, the ALJ identified Plaintiff's spina bifida, degenerative disc disease of the cervical and lumbar spine, arthritis of the right hip, degenerative

17

changes of the right shoulder, diabetes mellitus, and obesity as medically determinable and severe impairments. (R. at 15.) Second, The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. at 19–20.)

Substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. As the ALJ noted, Plaintiff's daily activities were inconsistent with her claims of complete disability and are inconsistent with her testimony. He pointed out that Plaintiff testified that she does not help with any chores in her home and that when she goes shopping she has to lean on the cart to move around the store. (R. at 21.) The ALJ however found that in contrast to her testimony, Plaintiff reported that she attended her daughter's school events, occasionally went out to eat, helped her daughter fold laundry and wash the dishes. (R. at 21, 327.) The ALJ properly considered these daily activities of living inconsistent with Plaintiff's claim of debilitating pain. *See Hensley v. Comm'r Soc. Sec.*, Case No. 1:15-cv-11, 2017 WL 1055152, at *5 (S.D. Ohio March 21, 2017) (finding the ALJ properly evaluated plaintiff's daily activities in assessing credibility). Upon review of Plaintiff's medical records, the ALJ also found that clinical findings in the record and the relatively conservative treatment she received did not support her claims. (R. at 21.) The ALJ stated properly referred to evidence in the record to support his findings:

> [t]he record shows that the claimant had only moderate disk protrusions in her lumbar spine with no canal stenosis (Exhibit 1F/2-3). The claimant received only conservative care for her back pain, and she had minimal clinical findings. The record shows that claimant had a normal gait with full strength in her extremities (Exhibits 2F/4-5, 6F/3, 15F/7-8, 17F/3-4). There is no mention of any of the claimant's treating providers recommending surgery. . . At the hearing the claimant testified that she has trouble reaching because of her right upper extremity (Hearing Testimony). Yet, there is no mention of any trouble reaching

in the record. Instead, Dr. Hollingsworth found that the claimant had full range of motion and strength in her shoulder following the surgery.

(*Id.*) Because the ALJ's made a reasoned and reasonable decision supported by substantial evidence in evaluating Plaintiff's subjective complaints, the ALJ's assessment of credibility is entitled to "great weight and deference." *Infantado*, 263 F. App'x at 475. Accordingly, the Undersigned finds that the ALJ offered good reasons for finding the Plaintiff not entirely credible and that substantial evidence supports those reasons.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 3, 2017  /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE